Good morning, Your Honor. Andrea Solis on behalf of a plaintiff and appellate Alex McBurnie. Your Honor, this case is regarding a 53-year-old woman who suffered a serious work-related injury that resulted in a persistent, constant, and severe lower back pain, which rendered her unable to sit for extended periods of time. And based on that, our argument is that she is precluded from working in a sedentary occupation. There's significant and voluminous medical records in this case that show that she does have aggravated pain with prolonged sitting, and we feel that the trial court erred in failing to consider the totality of the medical records. There were several records, one or two records, the district court focused on. May I ask you this? What was the scope of review of the trial court of the medical records that was submitted? Was it de novo or was there some deference? It was a de novo review, Your Honor. And what is our scope of review of the judge's district court's determination of the facts? Clearly erroneous, Your Honor. Hmm? Clearly erroneous, Your Honor. I didn't get that. Abuse of discretion, did you say? Clearly erroneous, Your Honor. Clear and erroneous, okay. Yes, and Your Honor, we do feel that there were additional medical records that were not adequately considered by the trial court, such as the record of Dr. Alpern, who indicated that our client is totally disabled, cannot complete an eight-hour workday. There are consistent reports of her subjective complaints of pain throughout the administrative record that we feel the trial court failed to give proper weight to.  Alpern. Considered. I believe he conducted one evaluation of our client, although it was a very extensive, thorough evaluation, versus Dr. Sophia, who I believe had seen our client over a number of years. All right, but his records were submitted to the district court judge. It was. And you're saying that the district court judge didn't receive them in evidence or kept them out of evidence? No, the district court didn't give it the due weight that it deserves. Didn't properly look at it. Did he mention them? He does mention the records. And what do weight did he not accord them that you think he should have accorded them? Well, I feel that it's very determinative of the ultimate issue, Your Honor, that she cannot work an eight-hour a day, and I feel that that should have been taken into consideration. Were there any facts in Dr. Alpern's records which the court clearly and erroneously evaluated? No, Your Honor, we're arguing that the district court just failed to give it the weight that it deserves. What weight does it deserve? Is it a treating doctor? He's a treating doctor, correct. And what weight should the district court have given it? The court should have just considered that in conjunction with all her other records as well, Your Honor. And the court primarily focused on just the one record from Dr. Sophia, which we feel just that alone is not a proper consideration for the court. The court should have taken into consideration all of the records, all of her subjective accounts of pain, which we feel that does clearly demonstrate that she is incapable of working a sedentary occupation, incapable of sitting for six hours a day or eight hours a day. And the records from Dr. Sophia, he never actually stated that she has full-time work capacity, that she has a full-time sedentary work capacity to work eight hours per day. No doctor that's treated her has actually even said that, that she has the capacity to work full-time in a sedentary occupation. There are a number of inferences in the records, a number of statements in the medical records, that we feel support the position that she is incapable of sitting for prolonged periods, which would preclude her from performing a sedentary occupation. There are some indications by the doctors that she can sit for 40 minutes if she's, she can stand for 40 minutes if she sits for 20 minutes in the hour, right? So there's some conflict in the evidence as to what the doctors think she is capable of doing, correct? There was, Your Honor, that's correct, but we feel that the totality of the evidence does paint the picture that she does have aggravated pain. What I'm trying to get from you is what facts did Dr. Alpern and Sophia testify to, or the records show, which the district court clearly and erroneously failed to consider with respect of a condition of Ms. McBurney's back? Well, I feel that the district court did fail to consider Dr. Alpern's statement that she's clearly totally disabled. Well, that's a conclusion. I understand that. My question is what facts did Dr. Alpern testify to respecting the construction of the back, which were clearly and erroneously found by the district court? He did state that she cannot complete an eight-hour workday as well due to her back pain. That, again, is an opinion. My question is did he state that she did or did not have a ruptured intervertebral disc, that she had a fractured vertebral body, that her fusion had come loose? He did state that she suffered from multiple and complex medical problems. He did state that she has chronic pain. She can carry no more than a gallon of milk without pain, that she has back pain and leg cramps that are possibly causing other problems. That's a relation of symptoms. I'm asking you, if you can, point to me some factual inaccuracy in the district court's opinion, which is evidence that Dr. Alpern's records were not considered properly. Well, Your Honor, my focus, I believe the district court did fail to consider his ultimate conclusion, Dr. Alpern's ultimate conclusion. That's right. All right. Ultimate conclusion. Thank you. Yes, Your Honor. Didn't the district court look at Dr. Alpern's report and recognize that he only had a one-time contact with her and wasn't the district court a little more concerned and gave more weight to the other treating doctors who had multiple times with her and over a number of years? Wasn't that, in essence, what the district court decided? That is correct, Your Honor. But as I stated, there is several other doctors as well who support the position that her client was totally disabled. There's Dr. Roger, there is Dr. Johnson, and then Dr. Alpern, who all stated that she was totally disabled in comparison to the one Dr. Sofia, who believes that she could perform some sedentary work. The district court said that he rejected their conclusions because none of them explained how or to what extent plaintiff's condition prevented her from fulfilling requirements of light or semi-sedentary work. And then he goes into an analysis where he says it's just, as Judge Baird was pointing out, that she was totally disabled but not really addressing the very broad term in the insurance policy, which is capable of doing any work for which she is qualified or could reasonably become qualified. That's correct, Your Honor. But I don't believe that's not a requirement of the policy to specifically state that she can or cannot. After the 24 months of pay, it's a very high standard to get that next level of long-term disability, right? I mean, that's a very high standard. Correct. And no one really testified as to any work for which she could reasonably become qualified. So I guess my question is, did the district court err in concluding on the basis of the testimony he relied on that she could do sedentary work with restrictions? Yes, Your Honor, I believe that was an error on the district court's part to conclude that based on the other multiple voluminous records in the file that show that she has pain with aggravated sitting and cannot sit for six hours a day. And it doesn't specifically state that. Unfortunately, none of her doctors specifically said that she's unable to sit for six hours a day or eight hours a day. But the clear inference from the records is that she cannot. I think the district court was struggling to find something. I mean, they asked questions like, does her pain render her unable to sit at a desk? Does she require constant rest to ease the pain? And, you know, something more factual and more specific to rely on. He was doing de novo review, too. And he just couldn't find those answers in the medical records. And I think that's where he erred, Your Honor. I mean, I believe that there is evidence. It's not specific, like you stated, but I believe that there is evidence to show that she is totally disabled and incapable of working in any capacity, even a sedentary capacity. And I believe the district judge failed to give enough consideration to her subjective complaints of pain. There's very credible reports of pain throughout the medical records. It's very consistent. And I believe the judge failed to give that enough consideration in that matter. And that way he clearly erred. What about Dr. Berge? Is it Berge? Berge. Dr. Berge's report, when she first had the accident, he did some surgery on her and treated her pretty long term. And he said that she was not totally disabled, that with restrictions she could do sedentary work. And I think he also had an MRI done on her, which showed that there was no long term disability showing through the MRI. Well, Your Honor, I don't believe Dr. Berge had ever gave her any restrictions as far as sitting. I mean, he never stated that she can or cannot sit for a certain number of hours. And he never stated that she has the capacity to work full time in a sedentary occupation. I mean, he did give her restrictions as far as lifting, I believe, and bending and stooping. But he did not specifically say that she has full time work capacity. And, Your Honor, there's a few other quick points I wanted to bring up. We are requesting that the court consider the Social Security Administration Disability Award. I know that was not brought to the trial judge's attention, but it was not available until after. How would that be relevant? I believe it's highly probative of the ultimate issue of whether she's disabled under the plan, because the administrative law judge found that she's unable to engage in any substantial gainful activity. I believe that's similar to the any occupation standard in the plan. It would be highly probative to the disability analysis in this case. Is it the same analysis as the AL? There's a law that applies to determining whether you're eligible for Social Security benefits. Is it the same as determining eligibility for long-term disability under this life insurance policy? They're similar, Your Honor. They're not exactly the same, but we believe the standards are similar enough where it is a relevant decision. And that Social Security Administration judge heard testimony from our client, heard testimony from a medical provider regarding her severe diagnosis, and determined that she's incapable of engaging in any substantial gainful activities. I believe that is highly probative of the issue. And this Court has even determined that those awards are relevant in the risk of disability context and have admitted those awards post-administrative record. Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Keiko Kojima, Counsel for Appellee Life Insurance Company of North America, which I'll be referring to as LIA. The question in this case is whether the District Court committed clear error in upholding Linus' claim determination. It did not. The District Court made the only reasoned determination that it could based on the evidence and the facts that it had before it. The plaintiff agrees that the standard for appellate review is clear error. This is a high bar. It is not enough for plaintiff to show that the District Court could have rendered more evidence or accepted more facts. The standard is clear error. It's not whether the facts are susceptible to one way or another. Rather, the District Court's decision has to be more than maybe wrong or probably wrong. It has to be firmly wrong. And this is because the District Court has the closest understanding of the record. Here, the District Court did the work. Not really. I mean, we can look at all the same documents that the District Court has, too. I mean, granted, he was operating under de novo review, and we're operating under clear error. But we do have all the records in front of us. True. At this level, however, it's not enough for plaintiff to show that the District Court should have looked at more of her subjective symptoms or more of the medical records. At this point, we're looking at what the District Court determined. Did the District Court make an error in finding that plaintiff did not satisfy her burden of proof? And that's an important point because the plaintiff in disability cases bear the burden of proof to establish disability. Disability isn't established by medical condition or diagnosis alone. And the District Court honed in on the right issue. It was looking for proof from plaintiff that she was disabled, functionally disabled, under the policy. She can't just point to a medical condition or a diagnosis or test results. And the important fact here that makes it different from many ERISA cases is that she didn't have the support from treating physicians to actually establish a disability under the NE occupation standard. Lina paid benefits for two years under the own occupation standard. It found that she couldn't do her own occupation as a sales manager at Macy's. However, the NE occupation standard is a much higher bar. Whereas plaintiff did not have any treating physician support from any disability certification. On the other hand, the District Court looked at two other physicians, not even associated with Lina, Dr. Bergy and Dr. Sophia, who gave restrictions and limitations that were consistent with sedentary work capacity. Dr. Bergy was plaintiff's longtime orthopedist. He treated her and did her surgery, and this is a time period of 2010, all the way up to 2015. He found and he gave restrictions and limitations consistent with sedentary capacity. And then we go to Dr. Sophia. Dr. Sophia is a Workers' Compensation Appeals Board appointed neutral. And he, over the course of four and a half years, evaluated the plaintiff in the workers' compensation setting. Over time, he evaluated her, he gave his opinions, and he's an orthopedist. He's someone that also gave her restrictions and limitations consistent with sedentary capacity. Plaintiff relies on Dr. Alpern. Dr. Alpern is not a treating physician. He did not treat her over time. He's not her orthopedist. In fact, Dr. Alpern is an internal medicine physician. Plaintiff filed a workers' compensation claim for disability due to hypertension based on stress related to her back condition. That's what Dr. Alpern was looking at her for. And, in fact, Dr. Alpern, in 2011, actually deferred to the orthopedist, Dr. Sophia, for opinions on disability. Ms. Kojima, does Dr. Sophia agree, and perhaps Dr. Burgi also, that Ms. McBurney should be prescribed Percocet? I do believe that over time, I don't, Dr. Sophia doesn't prescribe medication. He evaluates, and he did note the various medications. Percocet is a very strong opioid analgesic, is it not? It can be. It can, depending on the dosage. Is it your position that she can be doing sedentary work, taking Percocet every day? Percocet is one of those medications where, after surgery, if you're prescribed Percocet to get over the surgery, that can be an indication. But isn't she still taking it? I don't believe there's any evidence in the administrative record. And I want to get to that point of the timeframe as well. Mrs. McBurney submitted a late-filed claim. The actual disability date is in March of 2010. It took her until two years later, 2012, to actually submit a claim to Lina. And once she submitted that claim, she withdrew it immediately after. Now, why would that be? She said she didn't want to have the hassle. Well, it certainly has been a hassle. Right. So in actuality, then she resubmitted the claim two years later. So by this point ñ What difference does that make? Is it the position of Lina that her claim was untimely? They still looked at the claim. They still looked at the claim. In 2014, when she resubmitted the claim, they asked for the records from her treating physician, Dr. Berge. They looked at the records. They actually paid her claim for two years. But the point about the time frame is that in 2012 is where we're looking at the time period, the operative time period, because that's where the change from own occupation to any occupation occurs. So when we're looking at Mrs. McBurney's condition in 2016, 2017, and in 2018, where she testified in front of the administrative law judge, that's not determinative of whether she had a disability back in 2012. And, in fact, the Social Security Award, which cannot be considered because it's not only outside the scope of the administrative record that was before Lina, it's outside the scope of the district court record. Well, I'm wondering why we shouldn't remand this to the district court and let him consider that Social Security determination, given that it found that she could not be employed in any substantial gainful employment, which certainly seems to equal your standard, your client's standard. There's no precedent for including something outside the scope, and not only the- Didn't you argue below that she had been denied an award, and didn't you point to that in your brief? No, that was a very small incidence. Wait, no, you didn't, or yes, you did, and it was small? It was small, and it was in my opening brief, and I explained that she had been- that was in the factual recitation section. I didn't mention it at all in my reply brief. Well, why did you mention it in your opening brief? It's one factor, but it's not determinative at all. No, if you thought it was completely irrelevant, why would you raise it? The only reason I could see you putting that fact in is to influence us to think she wasn't disabled as the Social Security Administration defines it. Right. There are a lot of facts I put into that opening brief. I didn't mention it at all in my reply brief, and the district court never mentioned it in his district court opinion, including the fact- Did you argue it to the district court? No, not at all. Including the fact that the plaintiff- The reason why this Social Security award came in in 2018, which is eight years after the fact of disability, of the disability date, is because she also filed a late-filed Social Security disability claim. She filed her disability claim in 2000, her Social Security disability claim in 2014, which is four years after her start date of when she was injured on the escalator at Macy's in 2010. So in order for this court to remand the case, it would have to find a procedural hook in order to get to that point. And the motion- The record can't be supplemented on a very- And in this case, the plaintiff didn't even satisfy her burden to show that she was disabled from any occupation standard. She had an attorney at the appellate level, the administrative appellate level. She had her chance to provide the information, provide letters from the doctors that you might have seen in other cases, provide support from her doctors, but she didn't. And instead, she provided disability slips from the workers' compensation doctors. She provided offhand references to temporary, totally disabled under the workers' compensation verbiage. She didn't provide the support that the district court needed. No doctor said that she couldn't sit. No doctor gave her restrictions or limitations. And from that standpoint, I don't think it's appropriate to give the plaintiff a second bite at the apple based on new evidence that happens to come up eight years after the fact of a disability date. This is not- Weren't there some doctors that did say that she was totally disabled? No, that isn't the- That is- The term is temporary, totally disabled in the workers' compensation setting. In fact, if you look at the form that's filled out, there's a form from Dr. Roger, and that's the doctor that they're referring to, where he checks off the form, but there's another section of the form where it actually asks for restrictions and limitations. There's a lot of boxes to check out. He never gave any of that information. Was that pretty limited to? Checking the box, was it for a particular time period, as I recall? Right. There's a section where he could say that she could return to work. There's a section where he could say that she has a return appointment, and then on the bottom of the form, it has actual work restrictions, giving him the opportunity to say that she can't sit for a blank at a time. Well, but if he finds that she's totally disabled, it would be superfluous to say what work restrictions there were. No, but that's under the guise of own occupation. She's temporarily totally disabled from her own job. Ms. Fujima, we have here a case of a woman who has pain in her back due to probably a ruptured disc with referred pain in her left leg, which is the dermatome distribution of S5L1, L5S1. So you're saying that this person can do limited, restricted work with that constant pain in her left leg? Yes. She didn't satisfy her burden of proof to show she could not. She bears a burden of proof, and the fact that somebody has objective findings and subjective complaints does not necessarily mean that they cannot perform any occupation. That's why they need the certification from the physicians. All right. Okay, let me ask you a little bit about the labor market survey. Supposedly, within a certain radius of 60 miles, there were some occupations and jobs that she could secure as an assignment clerk, a take-order scheduler, and some other positions like that. And I guess I'm curious as to how that plays into this argument. Under the policy, she has to be unable to perform the duties of any occupation for which she can be qualified or is qualified by her training and experience. And so in conducting that part of the vocational analysis, Lina obtained vocational reviews in a vocational survey, a labor market survey, and they did find those occupations that were for which she can qualify and that she could perform with her restrictions and limitations that were provided by the Workers' Compensation Appeals Board neutral, Dr. Sofia, and her treating physician, Dr. Berge. Was that rebutted in any way? The results of the labor market survey? No, not those specific occupations. The point that the plaintiff raised was you can't prove that those jobs are physically open. I live in Yucca Valley. I'm looking at the radius. You have to show that it's a great job market and those jobs are available for me, and also that I'm hireable, that somebody would actually hire me. But those are not the requirements under Ninth Circuit law. What do you say about the transferable skills analysis evaluation that was done? Because the plaintiff argues that that's really not helpful to the defense. Lina found the occupations that she could be qualified for. There's nothing wrong with the actual transferable skills analysis. The plaintiff's main points were more legal points on the hireability arguments and the open job arguments. But she didn't raise anything specific about these specific jobs. All right. Thank you, counsel. I'll give you a minute for rebuttal. Thank you. Regarding the labor market survey, Your Honors, we did bring up in our briefs into the trial court that the analysis did not actually specify that job duties are required to perform those three sedentary occupations that the defendant alleged that our client can perform. Without that specific job duty description, we don't believe that the trial court or the defendant can reasonably conclude that she can perform those sedentary occupations. So I believe the labor market survey is fatally flawed in that respect. Another point would be the Social Security Award. Defense counsel argues that there has to be extreme circumstances to include that evidence, and we argue that in this case there are extreme circumstances because this is my client's last chance to obtain the benefits that she so desperately needs. If she's precluded, then she'll forever be precluded from receiving her disability benefits. All right. Thank you. Thank you, counsel. McBurney v. Life Insurance Company of North America is submitted, and I'll take up Gonzales v. Organogenesis.
judges: Wardlaw, Bea, Drain